ROBERT WAGGENER - SBN - 118450
214 DUBOCE AVENUE
SAN FRANCISCO, CA 94103
Phone:          (415) 431-4500
Fax:            (415) 255-8631
E-Mail:         rwlaw@mindspring.com

Attorney for Defendant JAMES RICHARDS

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | No. CR 08-00194-SBA (HSG) |
| Plaintiff, | **DEFENDANT JAMES RICHARDS' REPLY TO UNITED STATES' BRIEF REGARDING EVIDENCE IN SUPPORT OF CHARGE ONE OF THE AMENDED PETITION FOR VIOLATIONS OF SUPERVISED RELEASE** |
| v. | |
| JAMES RICHARDS, | |
| Defendant. | |
| _____/ | |

**INTRODUCTION**

Defendant James Richards hereby replies to the United States' Brief Regarding Evidence In Support of Charge One of the Amended Petition for Violations of Supervised Release. (ECF No. 149)

**1. PROOF AS TO CHARGE ONE**

The Court presided over the Form 12 evidentiary hearing and is clearly aware of the evidence offered by the government in reference to Charge One of the Amended Petition. The allegation of Charge One is that Mr. Richards criminally threatened three separate individuals, Melissa S., Jessica R., and Natasha B., none of whom testified. The offense of criminal threats is defined by California Penal Code §422.[1] Video clips of statements by Melissa S. and Jessica R.,

---

[1] CalCrim 1300 is the California jury instruction applicable to a violation of Penal Code § 422:
The defendant is charged [in Count __] with having made a criminal threat [in violation of Penal

1  to Oakland Police Department Officer Brantley were introduced through the testimony of Officer

2  Brantley over defendant Richards' hearsay objection.  There were no statements of Natalie B.

3  introduced. Attorney Jason Ross testified, but he does not know Mr. Richards and has never

4  spoken to him.  Due to his concerns for their safety on March 4-5, 2020, Mr. Ross met with his

5  ex-wife Jessica R. and Melissa S., and escorted them to various locations, including the Oakland

6  police station.

7  ## II. THE EVIDENCE IS NOT SUFFICIENT TO ESTABLISH
   ## THE CHARGE ONE VIOLATION

8
9         We all understand that for supervised release proceedings a preponderance of the

10  evidence standard applies, and hearsay is generally admissible - but not always.  As directed by

11  the Court, the government appropriately focuses on the lead cases applicable to the admissibility

---

12  Code section 422].

13  To prove that the defendant is guilty of this crime, the People must prove that:

14         1. The defendant willfully threatened to unlawfully kill or unlawfully cause great bodily
       injury to _____ <insert name of complaining witness or member[s] of complaining
       witness's immediate family>;

15         2. The defendant made the threat (orally/in writing/by electronic communication device);
          3. The defendant intended that (his/her) statement be understood as a threat [and intended

16     that it be communicated to _____ <insert name of complaining witness>];
          4. The threat was so clear, immediate, unconditional, and specific that it communicated to

17       _____ <insert name of complaining witness> a serious intention and the immediate
       prospect that the threat would be carried out;

18         5. The threat actually caused _____ <insert name of complaining witness> to be in
   sustained fear for (his/her) ownsafety [or for the safety of (his/her) immediate family];

19         AND

20         6. _____'s <insert name of complaining witness> fear was reasonable under the
   circumstances.

21  Someone commits an act willfully when he or she does it willingly or on purpose.
   In deciding whether a threat was sufficiently clear, immediate, unconditional, and specific,

22  consider the words themselves, as well as the surrounding circumstances.
   Someone who intends that a statement be understood as a threat does not have to actually intend

23  to carry out the threatened act [or intend to have someone else do so].
   *Great bodily injury* means significant or substantial physical injury. It is an injury that is greater

24  than minor or moderate harm.
   *Sustained fear* means fear for a period of time that is more than momentary, fleeting, or

25  transitory.
   [An immediate ability to carry out the threat is not required.]

26  [An *electronic communication device* includes, but is not limited to: a telephone, cellular
   telephone, pager, computer, video recorder, or fax machine.]

27  [*Immediate family* means (a) any spouse, parents, and children; (b) any grandchildren,
   grandparents, brothers and sisters related by blood or marriage; or (c) any person who regularly

28  lives in the other person's household [or who regularly lived there within the prior six months].]

**DEFENDANT'S REPLY TO UNITED STATES' BRIEF REGARDING EVIDENCE IN SUPPORT OF
CHARGE ONE OF THE AMENDED PETITION FOR VIOLATIONS OF SUPERVISED RELEASE**

of the hearsay statements of the three complaining witnesses[2], *United States v. Comito*, 177 F.3d 1166(9th Cir. 1999) and *United States v. Hall,* 419 F. 3d 980(9th Cir. 2005); *See also United States v. Walker*, 117 F.3d 417, 421 (9th Cir. 1997).  The appropriate analysis is the due process balancing test first set out in *Comito*, weighing a defendant's interest in his right to confrontation against the government's good cause for denying it. 177 F.3d at 1170.

As to the weight to be given to the right to confrontation, the *Comito* court stated that it depended on two primary factors: "the importance of the hearsay evidence to the court's ultimate finding and the nature of the facts to be proven by the hearsay evidence." Id. At 1171; See *Hall*, 419 F.3d at 986.  In <u>Hall</u>, the Court found that the defendant had little interest in confrontation with respect to the domestic violence allegation because the hearsay evidence was insignificant to the ultimate finding.  As to the false imprisonment allegation, the defendant had a relatively strong interest in confronting the hearsay evidence,[3] but it was outweighed by the government's proof of good cause as to failing to produce the hearsay declarant, and because the hearsay was corroborated by non hearsay evidence. *Id.* at 989 The relevant crime charged here is distinguishable from the crimes charged in *Hall*.  The crime of criminal threats is literally a crime of words, with other necessary elements.  Defendant Richards submits that the due process balancing weighs in his favor and that the hearsay evidence should not be admitted.  The non-hearsay evidence in this case is not sufficient to establish a 422 violation, and it is not even close.

As a preliminary matter, Mr. Richards never directly spoke to Jessica R. or Natasha B. on March 4 or 5, 2020.  His only reported conversation was with Melissa S.. Even in her recorded video statement that was played for the Court, Melissa S. stated that she herself was not

---

[2] Technically, Natasha B. does not qualify as a complaining witness. There is no evidence that she ever spoke to law enforcement, and it is not at all clear that Melissa S. ever spoke to Natasha B. about her communication with Mr. Richards to the effect that he said he was going to kill her. After apparently speaking with Mr. Richards in the lobby of Natasha B.'s building, Melissa S. spoke to Natasha and told her she was going to leave the building. There was no proof presented, hearsay or otherwise, that the alleged threat by Mr. Richards was conveyed to Natasha B..

[3] In *Hall*, the evidence of false imprisonment at the hearing primarily came from the victim's account of the evening that was testified to by a police officer as hearsay. *Id.* at 987

**DEFENDANT'S REPLY TO UNITED STATES' BRIEF REGARDING EVIDENCE IN SUPPORT OF CHARGE ONE OF THE AMENDED PETITION FOR VIOLATIONS OF SUPERVISED RELEASE**

threatened. Exhibit 1a at 5: 3-12. It was Natasha that was being threatened.  For that matter, there has been no proof presented that there was a clear, immediate, unconditional, specific threat to kill or cause bodily injury to Jessica R.. She only came upon the scene after the incident in Natasha's lobby, and there were no specific threats directed at her personally. The overall situation was understandably frightening, and that is not being minimized at all, but there is an absence of proof to specifically establish a 422 violation for any of the women.While the government points to an array of non-hearsay evidence to establish the proof of Charge One, the analysis has to be whether the non-hearsay evidence and the admissible hearsay after a due process balancing establish the elements of a Penal Code §422 violation by a preponderance of the evidence.

**A.     The General Circumstances on March 4-5**

As a general matter, there is no question that there was a serious incident involving Mr. Richards warranting the attention of the Oakland Police Department on March 4-5, 2020.  Mr. Richards and Melissa S. had some substantial turmoil in their long term relationship that legitimately got the attention of, and came to involve, some close friends of Melissa S.  Nobody actually got hurt, but it was an emotionally charged set of circumstances.

The physical contact between Mr. Richards and Melissa S. was when he traveled to the residence of Natasha B. On March 4, where Melissa S. was attending to her friend after her surgery. A discussion apparently took place in the lobby of the building.  The police were not called and Mr. Richards had no physical or verbal contact with Natasha B..  It was later, after midnight, that the police got involved.  Melissa S. received concerning phone calls from Mr. Richards after their physical encounter.  She then got in touch with her friend, Jessica R., who then got in touch with her ex-husband, Jason Ross.  Based on the information from Melissa S., Jason Ross assisted Melissa S., and Jessica R. in renting a room at the Oakland Marriott Hotel at 1011 Broadway.  Thereafter, and through the remainder of the night, there were calls and texts to Melissa S., Jessica R., and her son, from Mr. Richards' phone.  The phone calls were not answered.  The one text message that was introduced into evidence, was sent to Jessica R., stating "1511 Broadway right?  Here I come."  Because the Marriott's address was four blocks

DEFENDANT'S REPLY TO UNITED STATES' BRIEF REGARDING EVIDENCE IN SUPPORT OF
CHARGE ONE OF THE AMENDED PETITION FOR VIOLATIONS OF SUPERVISED RELEASE

4

from 1511 Broadway, the situation was alarming enough that a decision was made to personally go to the Oakland Police Department to file a report. Afterward, with the assistance of Jason Ross, Jessica R. brought Melissa S. to her secure Oakland residential building.

Jason Ross, Melissa S., and Jessica R. went to the Oakland Police Department and spoke to Officer Brantley. The Court heard the testimony of Officer Brantley, and also watched and listened to the body worn camera videos of his brief interviews of Melissa S. and Jessica R.. Those interview statements, along with the statements made by Melissa and Jessica to Jason Ross are all hearsay, and are discussed below with the analysis prescribed by *Hall*, but the point is that the non-hearsay evidence as to specific events of March 4-5 do not by themselves prove the crime of criminal threats. That evidence clearly establishes a tremendous cause for concern and worry that late night/early morning, but it is a leap to find a basis for the charged crime being committed.

The government emphasizes that a man identified as Mr. Richards went to the outside door of Jessica's residence at approximately 3:00 a.m. on March 5, as corroboration for a 422 violation. The Court saw the video and has the building security report. (Exhibits 12 and 14) There was no violence, no weapon involved, no threatening conduct, and no attempt to forcefully enter the building. The individual basically rang the doorbell or accessed the phone entry system from outside the building, had a short non-confrontational conversation with the door person for the building, and then peacefully drove off in a white truck. That behavior is certainly consistent with an estranged boyfriend reaching out to a friend of his girlfriend trying to communicate with the girlfriend, but it is not inherently threatening, or indicative of some sort of deadly intent toward either the friend or the girlfriend. Again, Jessica R. had a valid basis to be concerned and cautious, but that behavior outside her building did not establish a 422 criminal threat to her or Melissa.

As the Court knows, Mr. Richards was arrested and put in custody at Santa Rita on March 12, 2020. The government's attempt to bootstrap assorted jail phone calls as proof of 422 violations is disussed in a section below.

**DEFENDANT'S REPLY TO UNITED STATES' BRIEF REGARDING EVIDENCE IN SUPPORT OF CHARGE ONE OF THE AMENDED PETITION FOR VIOLATIONS OF SUPERVISED RELEASE**

5

**B.     The Government's Failure to Produce Hearsay Witnesses and the Lacking Indicia of Reliability of the Hearsay**

Part of the *Hall* hearsay analysis is to look at the effort by the government to produce the hearsay declarant to testify at the supervised release hearing. The court in *Hall* specifically reviewed the government's proof of the substantial efforts made by the government to locate the hearsay declarant, and their inability to find her. The witness in *Hall* was homeless and had left the shelter where she was staying without a forwarding address, and had not been heard from since. The probation officer tried to find the witness through the shelter, and there were searches conducted as to the witness's social security number and birth date. On that basis the *Hall* court supported the district court's conclusion that done all it could do to locate the witness. 419 F.3d at 988. Here, the government claims that two ATF agents and the probation officer attempted to reach Melissa and Jessica, but there is no actual evidence of those efforts that has been introduced. Apparently there was no attempt to reach Natasha. In footnotes to its original witness list (ECF No. 138) and then again in its amended witness list (ECF No. 144) it is stated that "The government has not been successful to date in its efforts to contact either [Melissa] or [Jessica]." In its trial brief the government states that phone calls, text messages, and emails went unanswered (ECF No. 149 at 9), but there is no detail provided as to the timing or nature of any attempted contact, or any indication that there were any such attempts at contact in the interim between the two evidentiary hearing sessions. These witnesses all have known addresses, but beyond indicating that there were efforts at "contact", there is no indication of any effort to serve a subpoena compelling the witness's attendance in court. Defendant submits that there was an inadequate, minimal effort to produce hearsay witnesses Melissa and Jessica.

As to the issue indicia of reliability of the hearsay statements it wants admitted for their truth, the government relies on the general, atmospheric facts relating to a frightening, scary situation. In the videos that were played, and through the testimony of Jason Ross and officer Brantley, including the described movement between locations and the trip to the police station, the evidence is clear that the people were concerned and worried about what Mr. Richards was up to. The multiple phone calls and texts of Mr. Richards reaching out to Melissa and people he

**DEFENDANT'S REPLY TO UNITED STATES' BRIEF REGARDING EVIDENCE IN SUPPORT OF CHARGE ONE OF THE AMENDED PETITION FOR VIOLATIONS OF SUPERVISED RELEASE**

6

barely knew only accelerated the general fears. A scary situation, however, does not corroborate the specific proof required for a violation of Penal Code § 422. Jessica may have felt threatened and scared based on all that was going on, but that does not equate to her actually being threatened by a person she never actually spoke with. Melissa was dealing with an intoxicated boyfriend in a situation she had never before been confronted with in the course of their relationship. She reached out to friends for comfort and shelter, but that contact and the anxiety she was experiencing do not necessarily equate to a specific threat on her life. In her hearsay statement she clearly states how confused she is by Mr. Richards' apparently drunken behavior, and how he had never acted that way before. She goes on to say that she was not personally threatened. The general circumstances of her conduct with Jessica and her ex-husband and the police are not by any means necessarily indicia of the reliability that she had personally been the subject of a 422 criminal threat.

**C.    Nature of Facts to Be Proven by Hearsay Evidence**

As discussed here throughout, the crime of violating Penal Code § 422 is a crime of words with very specific elements to be established. The only person who had direct contact with Mr. Richards in order to hear his specific communications on that March evening was Melissa. After meeting with Mr. Richards in Natasha's lobby, Melissa's recounting of her conversation with Mr. Richards just multiplies the hearsay. The specific words and delivery of those words by Mr. Richards are the essential facts of the charged violation. In that regard, the nature of the facts that the government is trying to prove by introducing hearsay evidence weighs heavily on the due process scale in favor of Mr. Richards. He has a very strong interest in confronting the two hearsay declarants as to the word attributed to him in their hearsay statements. Using the *Hall* balancing test in this case, all factors tip in favor of Mr. Richards and a finding that his due process rights were violated. For that reason, all of the hearsay statements of Melissa and Jessica are inadmissible and should be stricken from the record.

///

///

DEFENDANT'S REPLY TO UNITED STATES' BRIEF REGARDING EVIDENCE IN SUPPORT OF CHARGE ONE OF THE AMENDED PETITION FOR VIOLATIONS OF SUPERVISED RELEASE

**D.    Mr. Richards' Jail Call Excerpts Do Not Justify the Admission of Hearsay or Establish a Violation of Penal Code § 422**

Mr. Richards objected to the admission of his March 2020 jail calls on a number of grounds, and that objection is still under submission with the Court. In its brief, the government puts heavy emphasis on the jail calls as either corroboration of a 422 violation or somehow independent proof that a 422 violations took place at least a week or more before the jail calls were made. First of all, nowhere in the jail calls does Mr. Richards admit that he threatened to kill or unlawfully cause great bodily injury to anybody. Speaking to his relatives and a friend, Mr. Richards is clearly frustrated that he has not had any contact with his girlfriend Melissa. He is urging people to reach out and contact her, or put her in touch with him. In addition, in portions of the jail excerpts Mr. Richards discusses that when he last had contact with Melissa he was mad and angry. Being mad and angry at Melissa, however, does not establish the elements of a 422 violation, and there is no discussion of being mad or angry at Jessica or Natasha, or in any way threatening either of them. To be remembered is that the meeting of Mr. Richards and Melissa in Natasha's lobby on March 4 did not involve any physical contact or violence. Relationships are naturally difficult, and it is absolutely common that couples get angry with one another. That does not mean that they threaten to kill one another to create a sustained fear that they are going to carry out the threat. The jail calls should not be admitted at all, and to the extent they are admitted it should be recognized that they have little or no probative value.

## CONCLUSION

The Court should find the hearsay evidence in this case to be inadmissible based on the *Hall* due process balancing analysis. Furthermore, for the reasons stated, the Court should dismiss Charge One of the amended petition for lack of proof.

Dated: May 28, 2021                           Respectfully submitted,

                                                                   /s/
                                                      ROBERT WAGGENER
                                                      Attorney for Defendant
                                                      JAMES RICHARDS

**DEFENDANT'S REPLY TO UNITED STATES' BRIEF REGARDING EVIDENCE IN SUPPORT OF CHARGE ONE OF THE AMENDED PETITION FOR VIOLATIONS OF SUPERVISED RELEASE**